# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:** | **Bankruptcy Case** |
| **JAMES JEFFREY FORD,** | **No. 13-41415-JDP** |
| Debtor. | |

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

Ryan E. Farnsworth, Idaho Falls, ID, Attorney for Debtor.

Kathleen A. McCallister, Boise, ID, chapter 13 trustee.

### *Introduction*

The issue before the Court concerns confirmation of the proposed chapter 13[1] plan filed by debtor James Jeffrey Ford ("Debtor"). The chapter

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 1

13 trustee, Kathleen A. McCallister ("Trustee") has objected to inclusion of Debtor's former stepson in the tally of household members on Debtor's Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C") to calculate the duration of the plan payments. The Court conducted an evidentiary hearing on February 11, 2014, at which the parties appeared and offered evidence. Dkt. No. 26. The parties have also filed post-hearing briefs. Dkt. Nos. 27-29. This Memorandum addresses Trustee's objection and contains the Court's fact-findings and legal conclusions. Fed. R. Bankr. P. 7052; 9014.

*Facts*

Prior to filing for bankruptcy protection, Debtor was married to Stephany King. She was pregnant when they met, and Debtor was present at the birth of her child, a boy ("Stepson"). After Debtor and King married, they had a daughter ("Daughter") together.

After about three years of marriage, Debtor and King divorced in December 2012. Dkt. No. 1. Per the terms of their divorce decree, Debtor

MEMORANDUM OF DECISION – 2

was given custody of Daughter every other weekend, but testified that he also regularly has her one day on the non-custodial weekends. Exh. 206. Debtor further testified that he often visits Daughter and Stepson for several hours at least one other night each week.

When Debtor has custody of Daughter, he also always has Stepson as well. Despite having neither a biological nor legal connection[2] to Stepson, Debtor testified that he treats Stepson as his own child. For example, when Stepson is at Debtor's home, Debtor provides him with a bed, clothing, and food, and all his entertainment expenses are paid by Debtor. He is not reimbursed by King for any of the expenses for caring for Stepson, nor does he pay any sort of child support to King for him. Based on Debtor's uncontradicted testimony, his relationship with Stepson appears to be a deeply committed one, and it seems undisputed that Debtor's intent is to treat Stepson in all respects as he would his natural child.

After divorcing King, Debtor met another woman ("Girlfriend")

---

[2] Debtor has not adopted Stepson.

MEMORANDUM OF DECISION – 3

who has a son ("Boy") fathered by another man. Debtor, Girlfriend and Boy were living together at the time Debtor filed his chapter 13 bankruptcy petition on November 12, 2013. Exh. 200.

On his Form 22C, Debtor lists his household size as "5", a number which includes Debtor, Girlfriend, Daughter, Boy, and Stepson. Exh. 202. It is the inclusion of Stepson as a member of the household with which Trustee takes issue. On November 12, 2013, Debtor filed a proposed chapter 13 plan, the duration of which was calculated based on Debtor's contention that his household size is five. Exh. 201. Trustee objected and recommended to the Court that Debtor's plan not be confirmed. Dkt. No. 19.[3] After the evidentiary hearing and briefing, the issues were deemed under advisement.

*Analysis and Disposition*

---

[3] After the hearing on this issue, Trustee filed another objection to confirmation of Debtor's proposed plan, citing other problems in addition to Debtor's calculation of his household size. Some of these additional issues raised by Trustee may also impact determination of Debtor's applicable commitment period. Dkt. No. 30. While the Court would discourage Trustee's strategy of filing post-hearing objections to a debtor's plan, as it turns out in this case, Trustee's incremental approach is of no moment.

MEMORANDUM OF DECISION – 4

The number of persons in a debtor's household, called "household size" on Form 22C, line 16b, is an important component of the "means test" under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  In chapter 13, the means test calculations ultimately determine, among other things, the debtor's "applicable commitment period", or in other words, whether the debtor will be obliged to make payments under a plan for a term of 36 or 60 months. § 1325(b)(4).  In this case, the size of Debtor's household will, in part, determine the amount of income he has available under the means test to fund plan payments, and whether Stepson is counted in the household will indirectly dictate the required duration of Debtor's plan payments.

Following the passage of BAPCPA, there was confusion regarding how to count the persons to be included in a debtor's household for means test purposes.  In response, several approaches emerged in the case law, and bankruptcy courts remain split in their opinions.  *See, e.g.*, *In re Ellringer*, 370 B.R. 905 (Bankr. D. Minn. 2007) (adopting the "heads on beds" or Census Bureau approach); *In re Law*, No. 07–40863, slip op. at 2–8

MEMORANDUM OF DECISION – 5

(Bankr.D. Kan. April 24, 2008) (2008 WL 1867971) (applying the IRS dependency test, and rejecting other approaches).  In this District, the Court decided that the "economic unit approach" should be used.  *In re de Bruyn Kops*, 12.1 IBCR 28 (Bankr. D. Idaho 2012).  Under this methodology, the parties, and Court, ask

> whether the individuals in the [debtor's] house are acting as a single economic unit.  Thus, a household will include individuals who are financially dependent on a debtor, individuals who financially support a debtor, and individuals whose income or expenses are inter-mingled or interdependent with a debtor.

*In re Morrison*, 443 B.R. 378, 386 (Bankr. M.D.N.C. 2011).  Put simply, under the economic unit approach, a "household" for means test purposes "involves a debtor, [and] those financially supported by the debtor . . . ." *In re de Bruyn Kops,* 12.1 IBCR at 30.  Stated yet another way, "the correct approach is one that determines household members based upon a person's financial dependence upon, and residence with, a debtor." *Id*.  As such, the definition of household "must be based on the economic reality for a given debtor." *In re Robinson*, 449 B.R. 473, 482 (Bankr. E.D. Va. 2011).

MEMORANDUM OF DECISION – 6

The economic unit approach is flexible enough to encompass a variety of household situations, but avoids the problems with over-breadth occasioned by the lack of structure attendant to simply counting how many persons are either permanently or occasionally residing at the debtor's house, the lynchpin of the so-called "heads on beds" approach. For example, in *In re de Bruyn Kops*, the debtor asserted his household size was three, consisting of himself and his two children who resided with him only a portion of the time according to a shared custody arrangement with his former spouse. While the debtor was only partially responsible to financially support the children, and though they resided in his home only part-time, the Court rejected the notion that it should allow "fractional" dependents or household members in calculating household size for purposes of the means test. Because the debtor was responsible to provide financial support for his children, and since they resided with him at least part of the time, the Court determined that the two children could be included within debtor's household on Form 22C calculations. *Id*. at 31.

MEMORANDUM OF DECISION – 7

In this case, Trustee has not challenged Debtor's inclusion of either Daughter or Boy in Debtor's household size computation.[4] However, Trustee disagrees that Debtor should be able to count Stepson as a member of his household, because he has no legal relationship with Stepson, and because Debtor is not obligated to financially provide for him in any way. Applying the analysis from *In re de Bruyn Kops* guides the Court in resolving the current dispute, but it does not provide a definite answer. Moreover, the Court can locate no other case law examining the situation where a debtor, though not legally mandated to do so, is in fact caring for and financially supporting a child to whom he is not related. However, some decisions employing the economic unit approach are instructive.

In *In re Jewell*, 365 B.R. 796 (Bankr. S.D. Ohio 2007), the debtors sought to include their adult daughter and her three minor children who were living with them at the time of filing, as household members on their

---

[4] With regard to Boy, Trustee concedes Debtor, Girlfriend, and Boy function as an "economic unit" because Debtor and Girlfriend pool their money, and Girlfriend and Boy are both dependent upon Debtor for support.

MEMORANDUM OF DECISION – 8

Form 22A[5]. The debtors provided their daughter and her children with a home, food and other necessities, as well as funds for their daughter's transportation and medical expenses. The bankruptcy court found that, even though the daughter was an adult, there was "no doubt that [the daughter] was dependent on the Debtors for the support of herself and her children during the entire six months prior to this case, and should be considered part of the household." *Id*. at 801.

In another chapter 7 case, the issue was whether debtor's live-in boyfriend should be considered a member of her household. *In re Morrison*, 443 B.R. at 383. While acknowledging concerns about using the economic unit approach, the bankruptcy court rejected the broader "heads on beds" approach to determine household size that focuses solely on the number of persons actually occupying a home:

---

[5] Form 22A is the Statement of Current Monthly Income and Means Test Calculation utilized in chapter 7 cases. It also requires that the debtor designate a "household size" to be utilized in determining the applicable median family income. Because the form is sufficiently identical in both terminology and purpose to Form 22C used in chapter 13 cases, the Court is comfortable in considering the cases interpreting the meaning of who may be included in a debtor's household for purposes of Form 22A in this context.

MEMORANDUM OF DECISION – 9

> While this court agrees with [*In re Ellringer,* 370 B.R. 905, 910-11 (Bankr. D. Minn. 2007)] to the extent it recognizes that there will be instances [under the economic unit approach] in which unrelated, non-dependent individuals should be treated as part of a household, the "heads on bed" approach adopted by that court is too broad because it includes anybody who may be residing under the debtor's roof without regard to their financial contributions to the household or the monetary support they may be receiving from the debtor. Neither does it take into consideration their dependency or relationship to the debtor.

*In re Morrison*, 443 B.R. at 386 (quoting *In re Herbert*, 405 B.R. 165, 166-67 (W.D.N.C. 2008)). At bottom, the economic unit test appropriately rests upon the debtor's financial realities. *In re Skiles*, 504 B.R. 871, 880-81 (Bankr. N.D. Ohio 2014) (citing *Johnson v. Zimmer*, 686 F.3d 224, 237 (4th Cir. 2012) ("the entire purpose of identifying a debtor's household size is to use that number to determine his or her financial obligations and ability to pay. A definition of 'household' that is also tailored to reflect a debtor's financial situation focuses directly upon the ultimate purpose of the Code.")).

The Court understands that, in using this approach, whether the debtor is legally responsible for the financial support of another will not

MEMORANDUM OF DECISION – 10

always control the outcome. For example, in this case, using the economic unit approach means that both Girlfriend and Boy will be included in Debtor's household, as they are financially dependent upon Debtor. On the other hand, the economic unit approach mandates that some sort of direct financial relationship to a debtor must be present, whether it be financial dependence on a debtor, financial support of a debtor, or the intermingling of income or expenses with a debtor. *See In re Morrison*, 443 B.R. at 386.

In this case, in addition to having shared custody of her and paying for a portion of her financial needs, Debtor is legally responsible for Daughter's support under the divorce decree and custody arrangement with King. As to Girlfriend and Boy, not only do they all actually reside together, Debtor and Girlfriend have intermingled their financial affairs, and Girlfriend and Boy are financially dependent on Debtor. Therefore, as Trustee concedes, Daughter, Girlfriend and Boy are part of Debtor's household.

In contrast, the evidence shows that Stepson is not Debtor's child,

MEMORANDUM OF DECISION – 11

and he is not legally obliged to support him.  And although Stepson, as a matter of fact, lives with Debtor to the same extent as Daughter, and Debtor routinely supports Stepson financially while in his custody, neither of these realities are sufficient to make Stepson a part of Debtor's economic unit.  When the Court considers such factors as Stepson's financial contributions to the household (*i.e.*, none), any financial contributions he receives from Debtor, and whether he is dependent upon or has a legal relationship with Debtor, the Court concludes that Stepson can not be counted as a member of Debtor's household for Form 22C purposes. Debtor's relationship is founded upon an informal, quasi-custody arrangement with King.  That Debtor pays for some of Stepson's living and other expenses is commendable, but that does not make Stepson a part of the economic unit comprising Debtor's household.  Moreover, as noted above, Stepson is not strictly dependent upon Debtor. For example, Debtor does not pay for Stepson's insurance, school costs, or for his child care.

While the Court recognizes and respects the fact that Debtor values his relationship with Stepson and regards him as his own child and

MEMORANDUM OF DECISION – 12

stepbrother to Daughter, and intends to continue that relationship regardless of this decision, the Court must consider the Code as it is written. While the definition of a household for purposes of the Code must be a realistic one, the flexibility of the economic unit approach is not boundless, and Debtor has not demonstrated that he has the types of financial ties necessary to count Stepson as a member of Debtor's household for Form 22C purposes.

## *Conclusion*

Confirmation of Debtor's proposed chapter 13 plan must be denied due to the fact that Debtor's calculation of household size on Form 22C is incorrect. A separate order will be entered.

Dated: April 17, 2014

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 13